## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CR386HEA(MLM) |
| | ) | |
| DONALD ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Suppress Physical Evidence and Observations. [Doc. 18] The government responded. [Doc. 21] On September 11, 2008 an Evidentiary Hearing was scheduled. However, because defendant's arguments as to suppression were legal in nature and could be resolved by reference to the four corners of the Search Warrant documents, the parties agreed that testimony on defendant's Motion was unnecessary and that oral argument would suffice. Defendant was present and represented by counsel, Mr. Frank Anzalone. The government was represented by Assistant United States Attorney Cristian M. Stevens. The court has considered the arguments and briefs of the parties and makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

There are two Search Warrants at issue in this case. One is dated January 23, 2007; the other is dated June 27, 2007.

1.	The January 23, 2007 Search Warrant (Gov.Ex.A.)

On January 23, 2007, Detective Kody Lucas and Prosecuting Attorney Courtney George presented a Complaint for Search Warrant[1] to Phelps County Associate Circuit Court Judge Ron White.  The Complaint describes the location to be searched with particularity[2] and states that "certain narcotic drugs, apparatus, devices and instruments for the unauthorized use of narcotic drugs to wit:

> Narcotic Drugs, more specifically listed in the attached affidavits, including but not limited to marijuana, methamphetamine and miscellaneous drug paraphernalia, all as defined under Chapter 195, R.S.Mo.

are being held and kept in violation of Chapter 195, R.S.Mo. . . ." Gov.Ex.A. at 1.  The complaint further states "that the basis of this information and belief is contained in the attached affidavits of witnesses to facts concerning the said matter which affidavits are made a part hereof and are submitted herewith as a basis upon which this court may find the existence of probable cause for the issuance of said warrant."  Id.  The Complaint is signed on January 23, 2007 by Prosecuting Attorney Courtney George and Judge White.  The time is inadvertently listed as "1/23/07".  Id.

The affidavit, Gov.Ex.A. at 2, sworn to by Det. Kody Lucas, again describes the location to be searched with particularity as in the Complaint.  It says that on January 22, 2007 he was contacted by a reliable confidential informant ("CI1") who stated that within the past seventy-two hours, he/she had accompanied two individuals to the residence and observed them purchase methamphetamine from someone inside the residence.  On

---

[1]	The "complaint" is really an "application" for a search warrant. Although the term application is more frequently used, the court will refer to the document as a complaint as it is denominated and as it is referred to in the search warrant.

[2]	The location is residence at 17617 County Road 8190, Doolittle, Phelps County and it is described in detail.

January 23, 2007, Det. Lucas was contacted by another reliable confidential informant ("CI2") who said that in the past forty-eight hours CI2 had purchased methamphetamine on two separate occasions at defendant's residence from a white male known as "Don" who resides there. CI2 said he/she saw a large amount of methamphetamine and various types of weapons still at the residence when he/she left. CI2 also stated he/she saw a large amount of "pills" at the residence that were to be used to manufacture methamphetamine. **Id.**

The affidavit states that both CI's had provided reliable information in the past regarding narcotics and narcotics transactions which resulted in the issuance of other search warrants and arrests.

Judge White found that the Complaint and Affidavit established probable cause and issued a search warrant for defendant's residence at 17617 County Road 8190. The first paragraph of the Search Warrant refers to the part of the verified Complaint which states that "narcotic drugs and apparatus, devices and instruments for the unauthorized use of narcotic drugs are being held and kept in violation of Section 195, R.S.Mo.." at defendant's residence. Gov.Ex.A. at 3. The Search Warrant states Judge White's finding of probable cause that "said evidence of a crime is being so unlawfully held and kept in the place above described." The Search Warrant directs the executing officers to search the premises by day or night "and if said evidence be found at said place by you, that you seize same. . . making a complete and accurate inventory. . ." **Id.** The Search Warrant was signed by Judge White on January 23, 2007 at 4:00 P.M. **Id.**

The Warrant was executed and the Return and Inventory, dated January 24, 2007, lists as seized:

**Ten (10) long guns, one (1) revolver, Night Vision Scope, Surveillance Monitor, three (3) Surveillance Cameras, Tin Can w/pills, methamphetamine, plastic baggies, twist-ties, pipes with white residue, Digital Scales, $250.00 USC, Ammunition Can w/paraphernalia, Wedding Album, Unknown Liquid.**

Gov.Ex.A. at 4.

**2.      The June 27, 2007 Search Warrant**

On June 27, 2007, Narcotics Investigator, Rich Piatt, of the South Central Drug Task Force and Prosecuting Attorney Courtney George presented a Complaint for a Search Warrant to Phelps County Associate Circuit Judge Ron White.  The Complaint describes the location to be searched with particularity.[3]  The Complaint states that "certain narcotic drugs, apparatus, devices and instruments for the unauthorized use of narcotic drugs to wit:

> **Narcotic Drugs, more specifically listed in the attached affidavits, including but not limited to marijuana, methamphetamine and miscellaneous drug paraphernalia, all as defined under Chapter 195 R.S.Mo..**

are being held and kept in violation of Chapter 195 R.S.Mo.. . ."  The Complaint further states "that the basis of this information and belief is contained in the attached affidavits of witnesses to facts concerning the said matter which affidavits are made a part hereof and are submitted herewith as a basis upon which this court may find the existence of probable cause for the issuance of said warrant."  The Complaint is signed on June 27, 2007 by Prosecuting Attorney Courtney George and Judge White.  The time is listed as 1:15 P.M. Gov.Ex.B. at 1.

The affidavit, Gov.Ex.B. at 2-3, sworn to by Narcotics Investigator Rich Piatt again describes the location to be searched with particularity as in the Complaint.  It says that on

---

[3]      See Footnote 1 regarding the "Complaint."  The location again is a residence at 17617 County Road 8190, Doolittle, Phelps County and it is described in detail.

June 26, 2007, he was contacted by a confidential informant who had provided reliable information in the past. The CI said that within the last forty-eight hours he/she was at the above described address and knew the residence to be occupied by Don Robinson. He/she said that he/she has seen Robinson exchange "Ice" (methamphetamine) for cash on more than one occasion from his residence. The CI stated that within the last forty-eight hours Robinson had a black bag containing "Ice," glass methamphetamine smoking devices, and scales secreted in a safe in his bedroom. The CI said he/she has witnessed large amounts of traffic only staying for short periods of time come and go from Robinson's residence and the CI knew that this is a common practice for those distributing controlled substances. The Affidavit further states that NI Piatt had assisted the Phelps County Sheriff's Department with the execution of the previous Search Warrant at defendant's residence on January 23, 2007 at which time a substance was located in the residence that tested positive for the presence of methamphetamine and also located upon the execution of that Search Warrant were unknown liquids commonly seen at methamphetamine labs.

Judge White found that the Complaint and Affidavit established probable cause and issued a Search Warrant for defendant's residence at 17617 County Road 8190. The first paragraph of the Search Warrant refers to the part of the verified Complaint which states "that narcotic drugs and apparatus, devices and instruments for the unauthorized use of narcotic drugs are being held and kept in violation of Section 195, R.S.Mo.," at defendant's residence. Gov.Ex.B. at 4. The Search Warrant states Judge White's finding of probable cause that "said evidence of a crime is being so unlawfully held and kept in the place above-described." The Search Warrant directs the executing officers to search the premises by day or night "and if said evidence be found at said place by you, that you seize same. . .making

a complete and accurate inventory. . ."  The Search Warrant was signed by Judge White on June 27, 2007 at 1:15 A.M.  Gov.Ex.B. at 4.[4]

The Warrant was executed and the Return and Inventory, dated January 24, 2007, lists as seized 18 items, which list is incorporated by reference as if fully set out herein. Gov.Ex.B. at 5-6.

## CONCLUSIONS OF LAW

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched.  Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed.R.Crim.P. 41.  The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion.  United States v. Ventresca, 380 U.S. 102, 109 (1965).  Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented.  Gates, 462 U.S. at 230.  The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960).  Once a judicial officer

---

[4]    The Complaint states the time as 1:15 P.M.  However the Search Warrant states the time as 1:15 A.M.  Gov.Ex.B. at 1; Gov.Ex.B. at 4.

has issued a warrant upon a finding of probable cause, that finding deserves great deference. Gates, 462 U.S. at 236.

In the present case Judge White found probable cause based on the information contained in the affidavits. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (when issuing judge relies solely on supporting affidavit to issue warrant "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause"), quoting United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995); United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2004) (when issuing court relies solely on an affidavit to determine whether probable cause exists, only the information found within the four corners of the affidavit may be considered by reviewing court). The affidavits presented in the instant case clearly contain the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at the defendant's address. The facts set out above show that there was a substantial basis for concluding that probable cause existed.

In his Motion to Suppress defendant Donald Robinson challenges both of the Search Warrants executed at his residence. As grounds, defendant states:

1.) The Search Warrants executed at defendant's residence fail to describe the evidence to be seized with sufficient particularity;

2.) The Search Warrants and Applications in Support of the Search Warrants erroneously refer to methamphetamine as a narcotic;

3.) The Affidavits in Support of the Search Warrants contain stale information;

4.) The seizure of weapons, ammunition, records and other items exceeds the scope of the Search Warrants;

5.)    The Complaint in Support of the January 23, 2007 Search Warrant does not display the time of the Application as required by Missouri law; and

6.)    The June 27, 2007 Warrant was executed in the middle of the night without the requisite showing of necessity required by Missouri law.

The court will address each of defendant's arguments.

**1.)    Particularity**

Defendant's primary challenge is that neither of the Warrants describes in any way "the persons or things to be seized." Defendant's Motion at 1-2. Defendant argues that both Warrants "seem to give a roving commission to the officers to search the entire residence and to seize anything they please." Defendant finds particularly significant the fact that the Warrants' only reference to controlled substances refer to narcotics, which term does not include methamphetamine.

A search warrant must describe with particularity the place to be searched and the things to be seized. U.S. Const. Amend. IV; Rule 41, Federal Rules of Criminal Procedure. Police officers executing a search warrant may search for and seize items described in the search warrant. They may also seize other items of evidence, contraband or instrumentalities of a crime if discovered during the reasonable course of the search. <u>Warden v. Hayden</u>, 387 U.S. 294, 298-301 (1967); <u>United States v. Peterson</u>, 867 F.2d 1110, 1112-14 (8th Cir. 1989). The discovery of such other items need not be "inadvertent." <u>See</u> <u>Horton v. California</u>, 496 U.S. 128, 110 S.Ct. 2301, 2308-11 (1990). The Eight Circuit has held:

> To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized. <u>United States v. Strand</u>, 761 F.2d 449, 453 (8th Cir. 1985). The degree of specificity required will depend on the circumstances of the case and on the type of items involved. <u>Id.</u> A

> warrant naming only a generic class of items may suffice if the individual
> goods to be seized cannot be more precisely identified at the time that the
> warrant is issued. <u>United States v. Johnson</u>, 541 F.2d 1311, 1314 (8th Cir.
> 1976) (<u>per curiam</u>). We have upheld warrants authorizing the seizure of
> "certain books and records. . .relating to the extortionate credit transaction
> business," <u>United States v. Dennis</u>, 625 F.2d 782, 792 (8th Cir. 1980), and of
> "any and all chemicals, . . .books, records, chemical equipment, and personal
> papers relating to the manufacture and distribution of methamphetamine
> and the purchase of component chemicals and equipment which are
> contraband and fruits and instrumentalities of the commission of a crime
> which is in violation of [a certain statute, identified by section and sub-
> sections]", <u>United States v. Coppage</u>, 635 F.2d 683, 687 (8th Cir. 1980).

<u>United States v. Horn</u>, 187 F.3d 781, 788 (8th Cir. 1999). <u>See</u> <u>also</u> <u>United States v. Caves</u>,

890 F.2d 87, 92 (8th Cir. 1989); <u>United States v. Muckenthaler</u>, 584 F.2d 240, 245 (8th Cir.

1978).

As set out fully above, the evidence to be seized is described in the Affidavits,

Complaints and Search Warrants. The January 23, 2007 Affidavit describes in detail the

informants' information that defendant sold methamphetamine from, and stored

methamphetamine, guns, and pills at his residence. Gov.Ex.A. at 2. The June 27, 2007

Affidavit also sets forth the informant's information that defendant sold methamphetamine

from and stored methamphetamine, smoking devices and scales at his residence. Gov.Ex.B.

at 2. In addition, each Complaint explicitly describes the evidence to be found at

defendant's residence:

> [C]ertain narcotic drugs, apparatus, devices and instruments for the
> unauthorized use of narcotic drugs to-wit: Narcotic Drugs, more specifically
> listed in the attached Affidavits, including but not limited to marijuana,
> methamphetamine and miscellaneous drug paraphernalia, all as defined in
> Chapter 195 R.S.Mo..

Gov.Ex.A. at 1; Gov.Ex.B. at 1.

Each Search Warrant makes clear reference to the Complaint's statement that

"narcotic drugs and apparatus, devices and instruments for the unauthorized use of

narcotic drugs are being kept and held in violation of Section 195 R.S.Mo.," at defendant's residence.  Gov.Ex.A. at 3; Gov.Ex.B. at 4.

Judge White's finding of probable cause that "said evidence of crime is being so unlawfully kept and held," obviously refers to the evidence set forth earlier in the same paragraph.  Gov.Ex.A. at 3; Gov.Ex.B. at 4.  Although the use of phrases such as "said evidence" is currently regarded as legalese and somewhat archaic, there is no doubt as to its meaning.

Each Warrant commands the executing officers to seize "said evidence" again referring to the evidence fully described in the first paragraph.  Gov.Ex.A. at 3; Gov.Ex.B. at 4.

The Fourth Amendment requires that Search Warrants describe the things to be seized with sufficient particularity to prevent a "general exploratory rummaging in a person's belongings."  <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971).  "The particularity requirement insures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."  <u>Id.</u>  The test is whether an executing officer reading the description in the warrant would reasonably know what items are to be seized.  <u>United States v. Kimbrough</u>, 69 F.3d 723, 727 (5th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1157 (1996).  "In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the *types* of items to be seized."  <u>Id.</u>  In the present case the Search Warrants fill all the particularity requirements of the law and were sufficiently definite to enable the officers to reasonably ascertain and identify the place to be searched and the objects to be seized.  <u>Caves</u>, 890 F.2d at 92; <u>Coppage</u>, 635 F.2d at 686-87; <u>Muckenthaler</u>, 584 F.2d at 245.

**2.)    Deficiency**

Defendant argues the Search Warrants are deficient because the Complaints allege that defendant sold and stored methamphetamine at his residence but the Search Warrants order the officers to search for narcotics. Defendant argues that methamphetamine is not a narcotic.[5] Defendant misreads the Search Warrants. They refer to "certain narcotic drugs, kept in violation of Section 195 R.S.Mo." and explicitly reference the "complaint in writing, duly verified by oath" filed with the court. The Complaints themselves specifically incorporate by reference the Affidavits. The Affidavits specify that the presence of methamphetamine at defendant's residence was the target and the Complaints specify "Narcotic Drugs, more specifically listed in the attached Affidavits, including but not limited to marijuana, methamphetamine (emphasis added) and miscellaneous drug paraphernalia. . ." There can be no question that the Search Warrants articulated probable cause to believe that narcotic drugs including methamphetamine would be found at defendant's residence.

As pointed out by the government, the fact that methamphetamine may technically not be a narcotic is a distinction without a difference. Clearly the term "narcotics" was used generically as a synonym for "controlled substances." As set out above, it is the "fair probability that contraband or evidence of a crime will be found in a particular place" that

---

[5]        Section 195.010 R.S.Mo. defines "narcotic drug" as "opium, opiate. . ., cocoa leaves. . ., cocaine. . ., ecgonine. . .". It does not specifically define methamphetamine but does define "methamphetamine precursor drug" as "any drug containing ephedrine, pseudoephedrine, phenglpropanolamine. . .". Further, it defines "opiate" as "any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability. . ." § 195.010(26), (25) and (28) R.S.Mo. Black's Law Dictionary, 6th Ed. defines "narcotics" as "Generic term for any drug which dulls the senses and commonly becomes addictive after prolonged us. An addictive or otherwise harmful drug, the manufacture, importation, sale or possession of which is statutorily prohibited." It defines methamphetamine as "a synthetic drug, closely related to amphetamines and producing prominent central stimulant reactions without peripheral effects."

the issuing judge must find.  Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006).  Defendant's reading of the Search Warrant is exactly the hyper-technical approach deplored by courts.  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).  A common sense approach is the correct analysis.  The Search Warrants are not deficient.

**3.)  Staleness**

Defendant argues the Affidavits in Support of the Search Warrants contain stale information.  The Eighth Circuit discussed staleness in United State v. Horn, 187 F.3d 781 (8th Cir. 1999):

> We have held that there is no formula for determining when information has become stale.  United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). See also United States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996).  The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation; the lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.  Koelling, 992 F.2d at 822-23; see also LaMorie, 100 F.3d at 554.  We have further held that information four months old, or even three years old may supply probable cause for a warrant to search the home of someone suspected of illegal possession of a firearm, because possession is a continuing offense and because firearm enthusiasts tend to keep their weapons for long periods of time.  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995); cert. denied, 516 U.S. 903 (1995); see also United States v. Rabe, 848 F.2d 994, 995-97 (9th Cir. 1988) (child pornography mailed to defendant two years before detectives requested a search warrant may establish probable cause when supported by more recent correspondence describing defendant's collection).

Horn, 187 F.3d at 786-87.

Whether a delay between the issuance and execution of a search warrant is reasonably necessary depends on the facts and circumstances of each case.  United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993); United States v. Shegog, 787 F.2d 420 (8th Cir. 1986) (eight days delay reasonable).  "In determining whether probable cause

dissipated over time, a court must `evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought.'" United States v. Simpkins, 914 F.2d 1054, 1059 (8th Cir. 1990), cert. denied, 498 U.S. 1101 (1991), quoting United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983), cert. denied, 465 U.S. 1103 (1984).

In the present case the January 23, 2007 Affidavit contains information from a CI obtained one day earlier (on 1/22/07). The information consisted of observations made by the informant within the previous seventy-two hours. The January 23, 2007 Search Warrant also contains information from a second CI obtained the same day (1/23/07). This information consisted of the informant's observations within the previous forty-eight hours. Gov.Ex.A. at 2. The facts supporting the issuance of the Warrant at that time substantially correspond to the facts existing when the Warrant was executed. The continuing and on-going nature of narcotics trafficking supports the continued existence of probable cause. Williams, 10 F.3d at 595. It is reasonable for the officers to conclude the drug dealing continued at the same address for a period of time. Id. See also Simpkins, 914 F.2d at 1059.

Similarly, the June 27, 2007 Affidavit contains information from a CI obtained one day earlier (6/26/07). The information consisted of the CI's observations within the previous forty-eight hours. Gov.Ex.B. at 2.

That the information in the January 23, 2007 Affidavit was as much as four days old and the information in the June 27, 2007 Affidavit was approximately three days old clearly establishes that the information was not stale. See United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008) (holding month-old information in search warrant was not stale because, among other things, it suggested and ongoing drug conspiracy); United States v. Smith, 266 F.3d 902, 905 (8th Cir. 2001) ("In investigations of ongoing narcotic

operations, intervals of weeks or months between the last described act and the application for a warrant does [sic] not necessarily make the information stale." (internal quotation omitted)). There is no evidence or reason to believe that defendant packed up his methamphetamine operation during the interval between the CI's tips and the execution of the Search Warrant. This is particularly true considering that the defendant's methamphetamine operation continued from at least the first investigation in January, 2007 to the second investigation in June, 2007. The Affidavits in Support of the Search Warrants do not contain stale information.

**4.)   Scope of the Search Warrants**

Defendant argues the items seized went far beyond the purview of the Search Warrants in that the Warrants did not authorize the seizure of "weapons, ammunition, records and other extraneous items."

Both Search Warrants authorized the seizure of: "Narcotic Drugs and apparatus, devices and instruments for the unauthorized use of narcotic drugs. . .being held and kept in violation of Section 195 R.S.Mo." Gov.Ex.A. at 3; Gov.Ex.B. at 4. The items seized during the executions in January and June, 2007 either meet the exact description or were apparent evidence of defendant's criminal activity. The items seized in each execution are set out above. Officers executing a search warrant may seize not only the items described in the warrant but may seize other items of evidence, contraband or instrumentalities of crime if discovered during the reasonable course of the search. <u>Warden v. Hayden</u>, 387 U.S. 294, 298-301 (1967).

> The plain view doctrine allows police officers to
>
> seize evidence without a warrant when (1) `the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could

> be plainly viewed,' (2) the object's incriminating character is immediately
> apparent, and (3) the officer has `a lawful right of access to the object itself.'

United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995), quoting United States v. Hughes, 940 F.2d 1125, 1126-27 (8th Cir.) (quoting Horton v. California, 496 U.S. 128, 136-37 (1990)), cert. denied, 502 U.S. 896 (1991).  Here the officers gained entry to the residence under properly issued search warrants.  See Murphy, 69 F.3d at 242.  They observed evidence, the incriminating nature of which was immediately apparent.  The obvious association of cash, firearms and ammunition with drug trafficking is well established.  See United States v. White, 356 F.3d 865, 870 (8th Cir. 2004) ("Our court recognizes the known correlation between drug dealing and weapons and accepts they are closely and integrally related to the issue of possession of a firearm.") The photographs of defendant, his checks and the other documents identified defendant and linked him to the overtly illegal items found in the house.  See e.g. United States v. Ellison, 793 F.2d 942, 948 (8th Cir. 1986) (holding literature, insignia, and records of criminal enterprise, although not listed in warrant and not contraband, properly seized pursuant to plain view doctrine); United States v. Butler, 793 F.2d 951, 953-54 (8th Cir. 1986) (holding defendant's driver's license, and bill of sale and registration form listing defendant's name, and photographs of defendant's residence though not listed in warrant and not contraband, properly seized pursuant to plain view doctrine).  The items seized from defendant's residence during the execution of both Search Warrants were within the scope of the Search Warrants or otherwise properly seized.  There was no violation of the Fourth Amendment.

**5.)     The January 23, 2007 Search Warrant Complaint Does Not List the Time**

The defendant argues that the January 23, 2007 Search Warrant Complaint does not contain the time of the making of the application, as required by Missouri Revised Statutes § 542.276.2(2). Gov.Ex.A. at 1.

The clerical error in the Complaint is made totally irrelevant by the fact that the Search Warrant itself clearly states the date and time. Gov.Ex.A. at 3: "The 23rd day of January, 2007. . .4:00 P.M." In any event, such a clerical error regarding the Complaint does not effect the validity of the Search Warrant. See Massachusetts v. Sheppard, 468 U.S. 981, 990-91 (noting that the exclusionary rule was adopted to deter unlawful searches by police not to punish the errors of magistrates and judges, "and holding clerical error did not require suppression of evidence"); United States v. White, 356 F.3d 865, 868-69 (8th Cir. 2004) (rejecting defendant's argument that search warrant "was facially invalid because of an incorrect date," because "the inconsistency between the date on the search-warrant application form and the date on the search warrant does not eliminate probable cause"). In addition, failure to abide by the statutory requirements of Missouri law does not require the suppression of evidence in federal court. Even in Missouri courts, the failure to include the time under § 542.276 does not render a search warrant invalid. See State v. Miller, 815 S.W.2d 28, 35 (Mo.Ct.App. 1991) (holding failure of search warrant to say time of issuance did not render warrant invalid).

## 6.) Nighttime Execution

Defendant argues that the June 27, 2007 Warrant was executed at night without the requisite showing of necessity required by § 542.276 R.S.Mo..[6]

---

[6] Defendant cites the incorrect statute. The correct statute is § 542.291.1 which states: "The search warrant shall be conducted in a reasonable manner. The search may be made at night if making it during the daytime is not practicable."

In the present case there is no testimony or evidence that the June 27, 2007 Warrant was executed at night. There is only the bald statement in defendant's Motion concerning what he refers to as "Search Warrant Number Two" that was executed "in the middle of the night..." Defendant's Motion at 2. The government did not respond to this argument. The court has no way of knowing whether the Warrant was executed at night but will address the issue of nighttime execution for the sake of the thoroughness of this Report & Recommendation.

At common law, the term daytime meant "the time from the rising to the setting of the sun and that portion of the time after the setting of the sun, or before its rising during which there is sufficient natural light, other than moon light, so that the countenance of a man may be distinguished." <u>State v. Caine</u>, 31 S.W.2d 559, 561-62 (Mo.Ct.App.1930). Although defendant does not base his claim on Fed.R.Crim.P. 41, the definition of daytime in subsection (h) means the hours from 6:00 A.M. to 10:00 P.M.

21 U.S.C. § 879 states that a search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge finds there is probable cause for the warrant and its service at such time. Rule 41(c)(1) of the Fed.R.Crim.P. mandates the warrant be served in the daytime unless the judge by appropriate provision in the warrant and for reasonable cause shown, authorizes its execution at night. R.S.Mo. Section 542.291.1 R.S.Mo.. states the search may be made at night if making it during the day is not practicable. These Search Warrants were the result of state investigations and were applied for and executed by state officers. There is no evidence of any federal involvement. The propriety of the searches should be evaluated solely under the reasonableness standards of the Fourth Amendment. Fed.R.Crim.P. 41, 21 U.S.C. § 879 and Missouri State law are not implicated except as they shed light on the reasonableness

inquiry.  See United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994) (In federal prosecution,
challenge to a search conducted by state authorities is evaluated under Fourth Amendment
standards), cert. denied, 513 U.S. 878 (1994); United States v. Johnson, 12 F.3d 827, 835
(8th Cir. 1994) (In federal criminal prosecution a challenge to a search and seizure
conducted by state authorities is evaluated by application to federal Fourth Amendment
standards, not state or federal law), cert. denied, 511 U.S. 1095; United States v. Moore, 843,
847 (8th Cir. 1992) (Evidence seized by state officers in conformity with Fourth
Amendment will not be suppressed in a federal prosecution because a *state* law was
violated) (emphasis in original); United States v. Tate, 821 F.2d 1328, 1330 (8th Cir. 1987)
(In federal prosecution, legality of a search and seizure is not determined by reference to
state statute, but is resolved by Fourth Amendment analysis), cert. denied, 484 U.S. 1011
(1988).

    In the present case we need to determine whether, assuming a nighttime search
without a showing of necessity, the seized evidence should be suppressed.  The court finds
that the good faith exception to the exclusionary rule should be applied.  United States v.
Leon, 468 U.S. 897 (1984).  First, the Eight Circuit has made it clear that violation of state
laws governing state search warrants does not mandate the suppression of evidence in a
federal prosecution.  United States v. Applequist, 145 F.3d 976, 977 (8th Cir. 1988)
(Evidence not suppressed where police violated an Arkansas rule that required a warrant
could not be executed after 8:00 P.M. without finding "it can only be safely or successfully
executed at night.")  This holding is applicable to the present case where Missouri law
states: "The search shall be conducted in a reasonable manner.  The search may be made
at night if making it during the day is not practical."  § 542.291.1, R.S.Mo..  This law does
not require a specific finding that daytime execution was not "practicable" and leaves open

the question of what is involved in a "practical" inquiry. Thus to the extent Missouri law casts light on the reasonableness inquiry, any purported violation of the law does not mandate suppression of the evidence.

Second, and more significant, the Eighth Circuit has applied the <u>Leon</u> exclusionary rule for a nighttime search in <u>United State v. Berry</u>, 113 F.3d 121 (1997). The court said:

> We have held that night searches are not per se unconstitutional and thus "suppression is not automatic" if Rule 41(c)(1) is violated. <u>United States v. Schoenheit</u>, 856 F.2d 74, 77 (8th Cir. 1988). Instead we consider whether the "defendant is prejudiced or reckless disregard of proper procedure is evident." <u>United States v. Bieri</u>, 21 F.3d 811, 816 (8th Cir.), <u>cert. denied</u>, 513 U.S. 878, . . . (1994); <u>see also</u> <u>United States v. Freeman</u>, 897 F.2d 346, 349-50 (8th Cir. 1990) (Concluding that "non fundamental" Rule 41 violations where there is neither prejudice nor reckless disregard do not require suppression); <u>Schoenheit</u>, 846 F.2d at 77 ("the prejudicial error test controls"). Thus we consider whether the night search prejudiced the defendant or whether there was reckless regard of the proper procedure for a night search by the officials involved. If so, then the search is unconstitutional and the fruits of the search may thus be suppressed.

<u>United States v. Berry</u>, 113 F.3d 121, 123 (8th Cir. 1997).

To apply this two prong test in the instant case one must consider whether defendant Robinson was prejudiced by the nighttime search (assuming without deciding that the search occurred at night) or whether there was reckless regard of the proper procedure. Here, defendant Robinson was not prejudiced by the nighttime search. There is no evidence before the court that indicates he was rousted from sleep, was up and dressed, that he remained in his residence or any other facts concerning the execution. There is no evidence of whether anyone else was present in the residence and disturbed and the court finds that defendant was no more prejudiced by the alleged nighttime search than he would have been by a daytime search.

The evidence should not be suppressed if the officers executed the warrant with objectively reasonable good faith reliance on the issuing judge's determination of probable

cause.  United States v. Maholy, 1 F.3d 718, 722 (8th Cir. 1993) (Nighttime search; citing Leon exception).  In the present case both Warrants specifically direct the executing officers to execute the Warrant by "day or night."  Gov.Ex.A. at 3; Gov.Ex.B. at 4.

Under these circumstances there is clearly no showing that the officers acted in bad faith.  See United States v. Bieri, 21 F.3d 811, 816 (8th Cir.); cert. denied, 513 U.S. 878 (1994) (If no evidence that law enforcement officers acted in bad faith it follows there was no reckless disregard of proper procedure warranting suppression).   The officers in this case were entitled to rely on the finding of probable cause and the authorization to search by night by Judge White.

Under Leon, any one of four situations would permit a reviewing judge to determine that an executing officer should not rely on the warrant:  (1) if the issuing judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) if the issuing judge wholly abandoned his traditional role; (3) if the supporting affidavit to the warrant contains so little indicia of probable cause as to render official belief in its existence entirely reasonable; (4) if the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.  Leon, 468 U.S. at 923.  There are no such allegations in this case.  Defendant only challenges the fact that Judge White did not make an explicit finding of necessity for the nighttime search.  Clearly, however, he made an implicit finding by authorizing on the face of the warrant execution "by day or night" and the officers were entitled to rely on his expertise and knowledge of the law.

The court agrees that the time of the search is part of the reasonableness inquiry under the Fourth Amendment and agrees that at common law there was a strong aversion to nighttime searches.  However, the court finds that in this case not only is there no

evidence of the time of the execution of the warrant but even if it were executed at night, the <u>Leon</u> good faith exception to the exclusionary rule should apply as outlined above and the evidence seized should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Physical Evidence and Observations be **DENIED**. [Doc. 18]

**IT IS HEREBY ORDERED** that Trial in this case is set on <u>**November 17, 2008**</u> at <u>**9:30 A.M.**</u> before the Honorable Henry E. Autrey.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this <u>  2nd  </u> day of October, 2008.